NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250248-U

NO. 4-25-0248

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| NATHAN HANSEN, | ) | No. 25CF20 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Lannerd and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's conclusions that
(1) defendant committed a qualifying offense, (2) defendant posed a real and
present threat to the community, and (3) no condition or conditions of pretrial
release could mitigate the threat defendant posed were not against the manifest
weight of the evidence.

¶ 2        Defendant, Nathan Hansen, appeals the trial court's order granting the State's

motion for relief pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). For the

reasons stated below, we affirm.

¶ 3                                I. BACKGROUND

¶ 4        On January 9, 2025, defendant was charged by information with the following six

counts: (1) traveling to meet a child, a Class 3 felony (720 ILCS 5/11-26(a) (West 2024));

(2) indecent solicitation of a child, a Class 4 felony (*id.* § 11-6(a-5)); (3) indecent solicitation of a

child, a Class 3 felony (*id.* § 11-6(a)); (4) solicitation to meet a child, a Class 4 felony (*id.* § 11-

6.6(a)); (5) grooming, a Class 4 felony (*id.* § 11-25(a)); and (6) unlawful possession of a controlled substance, a Class 4 felony (720 ILCS 570/402(c) (West 2024)). The State filed a petition to deny defendant pretrial release.

¶ 5        At a probable cause hearing held the same day, the State proffered the following factual basis. On the morning of January 8, 2025, defendant, who was 45 years old, initiated contact with an Illinois State Police undercover special agent. The agent had posted an online advertisement for sexual services featuring images of a "young looking" female who was displaying herself in a sexual manner. The advertisement listed the female's age as 20 and included a phone number. At 11:28 a.m., defendant allegedly sent a text message to the number in the advertisement, inquiring as to whether the female was still available. Defendant texted he was looking for "HH," which the State proffered was "a shorthand term in prostitution and describe[d] a half-hour of sexual services." The officer responded to defendant, texting him that the half-hour rate was $170. The officer also texted defendant that she was 16, so defendant would need to wear a condom. After being told the female was 16, defendant arranged a meeting in a hotel room. At approximately 11:48 a.m., defendant arrived and provided the undercover officer with the agreed-upon $170. The officer again told defendant she was 16. At this point, officers entered the room and took defendant into custody. Upon searching defendant, officers found a small plastic container in his shirt pocket containing nine pills. Through markings on the pills, the officers identified them as oxycodone, a controlled substance.

¶ 6        From the proffered facts, the trial court found probable cause. It then proceeded to a hearing on the State's petition to deny defendant pretrial release. In addition to its previous proffer, the State asked the court to take judicial notice of defendant's pretrial investigation report. The report provided that defendant lived with Laura Moritz, his girlfriend of 15 years; worked full

time; and owned multiple rental properties. His criminal history included a 1998 conviction for driving under the influence of alcohol; multiple convictions for possession of cannabis, with the last being in 2000; and his most recent conviction for speeding in 2011. He scored 7 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), placing him at a risk level of 4 out of 6.

¶ 7          The State presented testimony from Nate Kessinger, a field supervisor with the Office of Statewide Pretrial Services (OSPS). Kessinger testified to the services OSPS offers defendants who are placed on pretrial supervision. OSPS provides text message reminders to defendants, checks in with them, attends their court dates, and helps connect them with the proper treatment providers to ensure they remain compliant with their conditions of release. OSPS also provides electronic monitoring via GPS ankle devices. When an individual is ordered to be on home monitoring, an "inclusion zone" is created around the individual's home address, and he is remotely monitored by an electronic monitoring unit. Kessinger testified that if an individual left the inclusion zone, the electronic monitoring unit would be notified. He confirmed that the electronic monitoring unit is not alerted if someone comes to the defendant's home and that OSPS cannot monitor a defendant's social media or browsing history and does not conduct home visits.

¶ 8          The State noted that the first five of defendant's charges were detainable offenses for which he could be denied pretrial release. It argued that defendant was dangerous, emphasizing that within approximately 20 minutes of first contacting someone whom he believed to be a minor female, he arrived at a hotel room to engage in intercourse with her. He also brought drugs, which, the State argued, indicated a possible intent to engage in drug use with the minor. The State further argued that the testimony of Kessinger showed that in this particular case, OSPS did not have the capability to monitor defendant effectively and, therefore, no conditions of pretrial release could

mitigate the threat defendant presented to members of the community.

¶ 9 Defense counsel argued that, although defendant scored 7 out of 14 on the VPRAI-R, 2 of those points came from his criminal history and his most recent criminal offense was nearly 25 years old. Counsel also argued that, because section 110-6.1(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(e) (West 2024)) presumes that all criminal defendants are eligible for release, the State's argument that no conditions of release could mitigate the threat defendant posed based on the type of crime he committed was inappropriate. Counsel further noted that defendant was employed and had "a lot of people kind of relying on him to be out for their livelihood, for their home and shelter."

¶ 10 The trial court found the State proved by clear and convincing evidence that defendant committed an offense that qualified for detention and that he posed a real and present threat to the safety of the community. However, it found the State did not prove that no conditions of pretrial release would mitigate the threat defendant posed. It noted that defendant's criminal history was old and largely composed of drug offenses, that he was not on probation at the time of the offense, and that no evidence was presented that he had a history of violating court orders. It ordered him released on the condition that, among other things, he would not have any contact with anyone under the age of 18 and would not use the Internet for any purpose.

¶ 11 On January 30, 2024, the State filed a motion for relief, asking the trial court to reconsider its denial of the State's petition. On February 28, 2025, the State's motion came for hearing before a new judge. The State asked the court to take notice of the report of proceedings from the prior hearing, as well as defendant's pretrial investigation report. Defendant presented testimony from Moritz. She testified that she and defendant had been in a relationship for more than 15 years and that they considered each other husband and wife. They did not have any children

together, and no children lived in the home. She stated that she had epilepsy and experienced seizures that could be life-threatening. Her health insurance was provided through defendant's job, and if he were to be detained, she would lose her insurance. She testified that defendant assisted her with her condition and she had no one else nearby who could help her. She stated that she would be home to verify that defendant was complying with his release conditions and that if he did not, she would report it.

¶ 12            Following argument from both parties, the trial court granted the State's motion for relief. In finding that defendant posed a threat to the community, the court discussed the nature of the crime; defendant's apparent readiness to commit it, as shown by the short amount of time that elapsed between defendant initiating contact with the undercover officer and appearing at her hotel room; defendant's familiarity with the prostitution term "HH"; and the large amount of oxycodone defendant had on him for a meeting at which he expected only two people to be present. The court further found that Moritz "ha[d] a significant vested interest in the outcome" of the hearing and concluded that, because of her dependence on defendant, her assertions that she would supervise him and report any violations were not credible. It also noted the previous testimony of Kessinger that OSPS could not adequately supervise defendant's criminal activity or any in-person contact he might have with a minor. The court therefore found there was a high likelihood that defendant would commit new criminal offenses if granted release and that the safety of the community could not be meaningfully achieved with the available conditions of pretrial release.

¶ 13            The trial court then immediately heard defense counsel's motion to reconsider. The court found it had made all the appropriate rulings and findings and denied the motion.

¶ 14            This appeal followed.

¶ 15                                      II. ANALYSIS

¶ 16        Defendant did not file a memorandum accompanying his appeal. As a result, we will consider the arguments made in his motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). His motion for relief states that, since being granted pretrial release, he has followed all court orders. This is followed by the single-sentence assertion that the trial court erred in granting the State's petition for relief. Defendant does not provide any argument beyond this single sentence. Indeed, he does not even state which of the court's findings or conclusions he believes were made in error, for example, if the court erred in finding he was dangerous or that no conditions of release could mitigate his dangerousness, or both or neither. Because of this, the State argues that he has waived any arguments on appeal.

¶ 17        We agree with the State. Rule 604(h)(7) provides that an appellant's arguments, "[w]hether made in the motion for relief alone or as supplemented by the memorandum *** must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." *Id.* Although defendant argues that the trial court erred in granting the State's motion for relief and denying him pretrial release, he offers no explanation as to why. He does not provide any specific arguments and makes only one factual assertion, which is not cited to the record. For appeals under Rule 604(h), "some form of argument is required, along with justification for claiming entitlement to relief—like references to the record, the evidence presented, or, if possible, legal authority." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 12. Defendant here has merely presented us with a conclusion, not an argument. We will not construct one for him. See *id.* ¶ 13 ("[W]e cannot be expected to formulate an argument for defendant out of whole cloth, and we decline to do so.").

¶ 18        We acknowledge that other districts have dismissed defendants' appeals under Rule

604(h) for failing to present arguments to support their contentions. See *People v. Lyons*, 2024 IL App (5th) 231180, ¶ 26; *People v. Duckworth*, 2024 IL App (5th) 230911, ¶ 8. When presented with this situation in the past, we have proceeded by reviewing the record on appeal and affirming if nothing in the record suggests the trial court abused its discretion. See *Inman*, 2023 IL App (4th) 230864, ¶ 14. Although our standard of review regarding decisions to grant or deny pretrial release has changed to a manifest-weight-of-the-evidence standard (see *People v. Morgan*, 2025 IL 130626, ¶ 38), we will employ the same approach here.

¶ 19        All defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). To deny a defendant pretrial release, the State must prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a qualifying offense, (2) the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, and (3) no condition or combination of conditions can mitigate the real and present threat defendant poses. *Id.* "[W]hen live witness testimony is presented at a pretrial detention hearing, a circuit court's ultimate detention decision \*\*\*, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 38.

¶ 20        Here, the trial court found that defendant had committed a qualifying offense, that he posed a danger to the community, and that no conditions of release could mitigate the threat he posed. We find nothing in the record to suggest that these findings were against the manifest weight of the evidence. Significant evidence was proffered that defendant committed multiple offenses that qualified him for pretrial detention. See 725 ILCS 5/110-6.1(a)(5) (West 2024). With respect to his dangerousness, the court noted that within approximately 20 minutes of contacting the

- 7 -

undercover officer, whom he believed to be a minor female, he appeared at her hotel room with drugs and money to facilitate a sexual act. The court also stated its particular concern over the amount of oxycodone pills defendant had, noting that amount of oxycodone would be sufficient to incapacitate the victim. The court further found that any possible conditions of pretrial release, such as electronic monitoring, home confinement, and a ban on Internet access, were not sufficient to address the specific concerns of this case, as they would not prevent defendant from continuing to use the Internet to contact minors or potentially meet with them at his home. In reaching this conclusion, the court credited the testimony of Kessinger and found Moritz to lack credibility. We do not find any of these conclusions to be against the manifest weight of the evidence.

¶ 21                                    III. CONCLUSION

¶ 22        For the reasons stated, we affirm the trial court's judgment.

¶ 23        Affirmed.